FILED

2006 Feb-09  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **GEMETRICE GRAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **CV 05-B-0097-S** |
| | ) |
| **ALABAMA A&M UNIVERSITY; JOHN GIBSON, individually and in his official capacity as an employee and President of Alabama A&M University; VIRGINIA CAPLES, individually and in her official capacity as an employee and Vice-President of Alabama A&M University; SHIRLEY HOUZER, individually and in her official capacity as an employee and Interim Registrar of Alabama A&M University,** | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motion to Dismiss, or in the alternative, Motion to Transfer Venue.  (Doc. 2.)[1]  Plaintiff Gemetrice Gray has sued Alabama A&M University and three school officials – John Gibson, Virginia Caples, and Shirley Houzer – alleging that defendants violated certain of her constitutional rights. Plaintiff also alleges state-law causes of action for outrage, negligence, slander and libel, misrepresentation, and breach of contract.  Upon consideration of the record, the submissions

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

of the parties, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 2), is due to be granted and plaintiff's claims are due to be dismissed. Defendants' Motion to Transfer Venue, (doc. 2), will be denied as moot.

## I. MOTION TO DISMISS STANDARD

The Eleventh Circuit Court of Appeals has stated that a Motion to Dismiss "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross and Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997)(citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)).  When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986)); *see also Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994).  The court will dismiss a claim only when no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Hishon*, 467 U.S. at 73; *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  However, "A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967))(emphasis in original).

2

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001)(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998)(citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)), *cited in McClendon v. May*, 37 F. Supp. 2d 1371, 1375 (S.D. Ga. 1999).

Defendants Gibson, Caples, and Houzer contend that they are entitled to qualified immunity as to plaintiff's federal claims.[2]  "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)(citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (citing *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996)); *see also GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998).

---

[2]Plaintiff's federal claims are based on alleged violations of her constitutional rights and 42 U.S.C. § 1981.  For purposes of deciding defendants' Motion to Dismiss, the court assumes that plaintiff intended to bring her constitutional claims under § 1983, although she did not plead as such.

In cases where defendants have the defense of qualified immunity, "the complaint must allege the relevant facts with some specificity. More than mere conclusory notice pleading is required." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(internal quotations and citations omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001)(citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

## II.  STATEMENT OF FACTS AS PLED IN COMPLAINT

Plaintiff graduated from Alabama A&M in 1999.  (Doc. 1 ¶ 1.)  While enrolled at Alabama A&M, plaintiff had earned a "D" grade in Organic Chemistry from Professor Jim Thompson.  (*Id.* ¶ 8.)  Sometime before August 2003, plaintiff asked Thompson if she could perform additional academic work to improve her Organic Chemistry grade.  (*Id.* ¶ 9.)  Thompson told plaintiff that he had recalculated her grade from years earlier and had determined that plaintiff had actually earned a "B" in Organic Chemistry.  (*Id.* ¶¶ 10-11.)  Thompson, with approval from Dr. Jerry Shipman, Dean of Arts and Sciences at Alabama A&M, changed plaintiff's grade to a "B" and forwarded the grade change to the Registrar's Office.  (*Id.* ¶¶ 9, 12-14.)

Apparently, plaintiff had decided to try to improve her Organic Chemistry grade because she sought enrollment in the pharmacy program at Florida A&M.  (*See id.* ¶¶ 7-8, 13-16.)  Her Complaint states that Thompson wrote a letter to Florida A&M regarding the

change in her Organic Chemistry grade, and she sent a transcript, reflecting the "B" in Organic Chemistry, to Florida A&M. (*Id.* ¶¶ 13, 15.) Thereafter, plaintiff "was admitted into Florida A&M University Doctorate of Pharmacy Program." (*Id.* ¶ 15.)

Plaintiff began attending classes at Florida A&M in the fall of 2003. (*Id.* ¶ 16.) During her first semester, the Associate Dean of Pharmacy told her the university had been informed that her transcript was fraudulent. (*Id.* ¶ 18.) Defendants Shirley Houzer and Virginia Caples represented to Florida A&M that plaintiff's transcript was "fraudulent." (*Id.* ¶¶ 19, 20.) Based on the "transcript situation," plaintiff was forced to withdraw from Florida A&M. (*Id.* ¶ 25-26.)

After plaintiff withdrew, Caples met with plaintiff's father, Dr. Herbert Gray. (*Id.* ¶ 27.) Plaintiff alleges:

> Caples [told Dr. Gray] his daughter [had] submitted a fraudulent transcript to Florida A&M University and that she [Caples] had changed the grade on his daughter's transcript [that had] forced his daughter's withdrawal from Florida A&M University.
>
> Dr. Gray left Caples in disbelief and continued to defend[ ] his daughter['s] innocence. Dr. Gray was told in a sarcastic manner as he was leaving Caples, "This is nothing personal, only business." Dr. Gray at this time knew it was a personal retaliation against him, for he was once President of the Board of Trustees for Alabama A&M University and an unfavorable decision related to Caples was rendered during his tenure as president.

(*Id.* ¶¶ 27-28.)

At a Board of Trustees meeting, the Board told defendant John Gibson, President of Alabama A&M, to "bring an accord to Gray's situation." (*Id.* ¶¶ 29-30.) According to

5

plaintiff, "Gibson arbitrarily, wilfully, and . . . maliciously failed to act as instructed by the

Board of Trustees."  (*Id.* ¶ 31.)

## III.  DISCUSSION

Plaintiff filed this action on January 20, 2005, alleging 14 causes of action:

1.  Fifth and Fourteenth Amendment Procedural Due Process
2.  Fourteenth Amendment Denial of Substantive Due Process
3.  Fifth and Fourteenth Amendment Stigma Due Process Claim
4.  Fifth Amendment Deprivation of Property Without Due Process of Law
5.  Fifth Amendment Deprivation of Property Without Just Compensation
6.  Fourteenth Amendment Deprivation of Property Without Just Compensation
7.  Fourteenth Amendment Equal Protection Violation
8.  Violation of First Amendment Freedom of Association
9.  Violation of  First and Fourteenth Amendment Unlawful Retaliation
10.  Breach of Contract
11.  Outrage
12.  Misrepresentation
13.  Gross Negligence
14.  Libel and Slander

(*Id.* at 32-91.)  Defendant contends that plaintiff's claims based on federal law are due to be

dismissed because (1) she has not alleged a constitutionally protected property or liberty

interest, or association right sufficient to support her claims under the First Amendment, Due

Process Clauses, or Takings Clause; (2) she has not alleged conduct based on her race; and

(3) defendants are immune from suit based on the Eleventh Amendment and qualified

immunity.  (Doc. 2.)  For the reasons set forth below, the court finds that plaintiff's federal

claims are due to be dismissed.  Because all federal claims are due to be dismissed, the court

will dismiss plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c).

## A.  FEDERAL CLAIMS

### 1.  Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  This Amendment bars suits against the State brought by its own citizen as well as suits brought by the citizens of another State.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

"Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)(citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam )).  "The Eleventh Amendment prevents suits in federal court against an unconsenting state by its citizens or citizens of other states.  This immunity includes 'a federal suit against state officials on the basis of state law . . . when . . . the relief sought and ordered has an impact directly on the State itself.'" *Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005)(quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 117 (1984)).  Also, "Congress has not abrogated Eleventh Amendment immunity in section 1983 cases." *Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995)(quoting *Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir.1990)).

### a. Alabama A&M University

The law is "well-settled that, in the context of Eleventh Amendment immunity, . . . Alabama A&M [is an] 'alter ego[ ]' or instrumentalit[y] of the state, thus immune from suit in federal court." *Alabama State University v. Baker & Taylor, Inc.*, 998 F. Supp. 1313, 1315 (M.D. Ala. 1998)(citing *United States v. State of Alabama*, 791 F.2d 1450 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085 (1987); *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985)(citing *Massler v. Troy State University*, 343 So. 2d 1 (Ala. 1977); *Ellison v. Abbott*, 337 So. 2d 756 (Ala. 1976)); *Davis v. Alabama State University*, 613 F. Supp. 134, 139 (M.D. Ala. 1985)).

Plaintiff alleges federal constitutional claims, brought pursuant to § 1983, and a number of state law claims. Alabama A&M's Eleventh Amendment immunity has not been abrogated and Alabama A&M has not consented to be sued in federal court. Therefore, defendants' Motion to Dismiss is due to be granted as to all claims against Alabama A&M, and such claims will be dismissed.

### b. Official-Capacity Defendants

Plaintiff has sued defendants Gibson, Caples, and Houzer in their official capacities as employees of Alabama A&M. "Suing individuals in their official capacities is another way of pleading an action against an entity of which an officer is an agent. . . . [A] state official sued in his official capacity [is] not [a] 'person[ ]' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for

purposes of § 1983 when prospective relief, including injunctive relief, is sought." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995)(citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n.10 (1989); *Graham*, 473 U.S. at 165)(internal citations and quotations omitted).

Therefore, all claims for money damages and retroactive equitable relief against official-capacity defendants Gibson, Caples, and Houzer are due to be dismissed.

"To ensure the enforcement of federal law, . . . the Eleventh Amendment permits suits for ***prospective*** injunctive relief against state officials acting in violation of federal law.  This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)(citing *Green v. Mansour*, 474 U.S. 64, 71-73 (1985); *Milliken v. Bradley*, 433 U.S. 267 (1977); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ex parte Young*,  209 U.S. 123, (1908))(internal citations omitted, emphasis added).  This doctrine, known as the *Ex parte Young* doctrine, "applies ***only*** to ongoing and continuous violations of federal law.  In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999)(citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); *Green*, 474 U.S. at 68)(emphasis added).

Plaintiff does not allege an ongoing violation of federal or state law; she alleges only past wrongs – the changing of her "B" grade in Organic Chemistry back to a "D," communications to Florida A&M, and failure to follow directions of the Board of Trustees.

Because these alleged past wrongs are not threatened to reoccur, plaintiff is not entitled to prospective injunctive relief against the official-capacity defendants. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)("While past injury supplied a predicate for compensatory damages, it did not, according to the Court, supply one for prospective equitable relief since the fact that such practices had been used in the past did not translate into a real and immediate threat of future injury to [plaintiff].")(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

Therefore, plaintiff's claims against the official capacity defendants are barred by the Eleventh Amendment and will be dismissed.

## 2.  QUALIFIED IMMUNITY

The individual-capacity defendants – Gibson, Caples, and Houzer – contend that the § 1983 claims against them in their individual capacities are due to be dismissed on the basis of qualified immunity.  (Doc. 2 ¶ 10.)

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).  But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id*.  They are "immune" from suit. *Id*.  We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id*.

*Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir. 2004).  "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."

*Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)))(internal citations and quotations omitted.).

The Eleventh Circuit uses a two-step analysis to determine whether a public official has qualified immunity: (1) the public official must establish that he was acting within the scope of his discretion; and (2), if the public official establishes that he was acting within his discretion, the plaintiff must show that the public official violated clearly established statutory or constitutional law. *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). The parties do not dispute that the individual defendants were acting within their discretion; therefore, the sole issue for the court is whether defendants' actions violated clearly established constitutional law.

Whether defendants' actions violated clearly established constitutional law also "consists of a two-part inquiry, set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)." *Harris v. Coweta County, Ga.*, 433 F.3d 807, 812 (11th Cir. 2005).

> First we ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" [*Saucier*, 533 U.S. at 201] If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete. However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004)(citing *Saucier*, 533 U.S. at 201-02).

11

*Id.*

The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736.  In a civil action brought pursuant to § 1983, the plaintiff bears the burden of demonstrating a constitutional violation. *Harris*, 433 F.3d at 811(citing *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)); *Kesler*, 323 F.3d at 877-78.

### a. Claim One: Fifth and Fourteenth Amendment Procedural Due Process

Plaintiff alleges, "The conduct of the defendants' denied Gray procedural due process during the period leading up to the Alabama A&M University officials changing the [grade] earned by her according to the professor." (Doc. 1, ¶ 34.)  She also alleges that she was not given notice of her grade change.  (*Id*. ¶ 35.)

She alleges defendants denied her procedural due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  The court notes, "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*,  534 U.S. 161, 167 (2002).  Because plaintiff does not allege any deprivation caused by the United States or its agent, she cannot establish a violation of her due process rights under the Fifth Amendment.  Therefore her Fifth Amendment procedural due process claim is due to be dismissed.

12

As to her Fourteenth Amendment procedural due process claim, plaintiff must show three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)(citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Plaintiff contends that defendants denied her due process in their decision to change the "B" in Organic Chemistry back to a "D." (Doc. 1¶¶ 34-35.) "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, ____ U.S. ____, 125 S. Ct. 2384, 2393 (2005). Therefore, in order to establish a violation of the due process clause of the Fourteenth Amendment, plaintiff must show that she had a constitutionally-protected liberty or property interest in the "B" in Organic Chemistry, that the state acted to deprived her of this grade, and that the process for changing her grade was constitutionally inadequate.

### i.  Property Interest

The  Supreme Court has held:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it.  He must, instead, have a ***legitimate claim of entitlement*** to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Such entitlements are "'of course, . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Paul v. Davis*, 424 U.S. 693, 709 (1976)(quoting *Roth*, *supra*, at 577); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998).

13

. . .

      Our cases recognize that ***a benefit is not a protected entitlement if government officials may grant or deny it in their discretion***. *See*, *e.g.*, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-463 (1989).

*Town of Castle Rock, Colo. v. Gonzales*, ___ U.S. ___, 125 S. Ct. 2796, 2803 (2005)(emphasis added).

      The unique circumstances of this case indicate that plaintiff does not have a protected property interest in a "B" in Organic Chemistry.  Plaintiff graduated from Alabama A&M years before she sought to improve her Organic Chemistry grade.  Clearly, Alabama A&M had discretion to allow or not to allow an alumnae to alter her transcript after graduation.  Under the facts of this case, the court finds that plaintiff had no legitimate claim of entitlement to a grade change years after she graduated from Alabama A&M, and that such a grade change could be granted or denied in the discretion of Alabama A&M.  Plaintiff has presented no argument or evidence to the contrary.

      Therefore, the court finds that plaintiff did not have a property interest in a grade change years after graduation.

### ii.  Liberty Interest

      "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies. *Wilkinson*, 125 S. Ct. at 2393 (internal citations omitted).  The Supreme Court has not defined with exactness what is a liberty interest; however, it has stated:

> Without doubt, "liberty" denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*,  262 U.S. 390, 399 (1923).

As with property interests, a person claiming a liberty interest created by the Constitution "must establish a legitimate claim of entitlement to it." *Barfield v. Brierton*, 883 F.2d 923, 935 (11th Cir. 1989)(citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989)).  Also, a person claiming a liberty interest created by state law "must show that the state placed 'substantive limitations on official discretion.'"  *Id*. (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).  "[T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson*  490 U.S. at 462 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

The change of plaintiff's Organic Chemistry grade from a "D" to a "B" and back to a "D" after she graduated did not infringe upon any protected liberty interest.  The court cannot find, and plaintiff has not shown, that she had a clearly established right to alter her transcript following graduation.  Nothing in the record indicates that the State of Alabama has established substantive predicates to govern decision-making in such an unusual circumstance or has mandated the outcome to be reached if relevant criteria is met.  Plaintiff

has not presented any evidence or argument to the contrary.  Therefore, the court finds that plaintiff did not have a liberty interest in a grade change after graduation.

Because plaintiff has not established that she had a property or liberty interest in a grade change after graduation, her procedural due process claim based on the changed grade will be dismissed.

### b.  Claim Two:  Fourteenth Amendment Denial of Substantive Due Process

Plaintiff alleges:

> The conduct of the defendants violate[d] Gray's right to substantive due process, namely, the defendants in their individual and official capacities acted arbitrar[ily] and capriciously in their decision [not to] stand behind the grade given by Alabama A&M's professor.  There was no rational basis for the defendants to make their decision and defendants' decision as [sic] motivated by bad faith and ill will unrelated to Gray's academic performance.

(Doc. 1 ¶ 39.)

With regard to considering substantive due process claims, the Supreme Court has held:

> Our established method of substantive-due-process analysis has two primary features:  First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.  Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.  Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decisionmaking, that direct and restrain our exposition of the Due Process Clause.  . . .[T]he Fourteenth Amendment forbids the government to infringe . . . fundamental liberty interests at all, no

16

matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

*Washington v. Glucksberg*, 521 U.S. 702, 720-721(1997)(internal citations and quotations omitted).  "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Behrens v. Regier*, 422 F.3d 1255, 1264 (11th Cir. 2005)(quoting *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)).  A "fundamental right" is a right created by the Constitution. *Greenbriar Village, L.L.C. v. City of Mountain Brook*, 345 F.3d 1258, 1262 (11th Cir. 2003), *quoted in Behrens*, 422 F.3d at 1264.

As set forth above, plaintiff had no "fundamental right" to a change of her Organic Chemistry grade after she had graduated from Alabama A&M.  Plaintiff has offered no argument or evidence to the contrary. Therefore, the court finds that plaintiff's substantive due process claim based on such grade change is due to be dismissed.

### c.  Claim Three:  Fifth and Fourteenth Amendment Stigma Due Process Claim

Plaintiff alleges:

43.  Defendants' conduct toward Gray . . . interfered with and violated Gray's constitutional right to be free from having defamatory statement disclosed to a third party publicly.

44.  Defendants knew or should have know the defamatory statements made against Plaintiff were false.

(Doc. 1 ¶¶ 43-44.)

"[A] plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001)(citations omitted), *quoted in Behrens*, 422 F.3d at 1260.  To demonstrate a "violation of some more tangible interest," plaintiff must show that "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished," and "this alteration, officially removing the interest from the recognition and protection previously afforded by the State, [is] sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment." *Paul v. Davis*,  424 U.S. 693, 711 (1976).

As set forth above, the court finds that plaintiff did not have a protected liberty or property interest in the changed grade.  Therefore, the changing of her Organic Chemistry grade from a "B" back to a "D" does not satisfy the "plus" of the stigma-plus analysis.

Plaintiff's Complaint also alleges that the defamatory statements forced her to withdraw from Florida A&M.  (Doc. 1 ¶¶ 25-26, 45.)  The court notes that "no court has decided whether a protected property interest exists in a student's post-secondary education." *Hamil v. Vertrees*, No. CIV A. 98-D-508-N, 2001 WL 135716, *9 (M.D. Ala. Jan. 10, 2001)(citing *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 222 (1985); *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 84-85 and 91 (1978); *Haberle v. University of Alabama in Birmingham*, 803 F.2d 1536, 1539 n.1 (11th Cir. 1986)).  The

"assumption" of the Supreme Court and the Eleventh Circuit that such a right to continued

enrollment exists "cannot clearly establish [such right] for purposes of qualified immunity."

*Id*. at *9 (citing, inter alia, *Akins v. Board of Governors*, 849 F.2d 1371, 1376 (7th Cir.),

*vacated on other grounds* 488 U.S. 920 (1988)).[3]  Therefore, even if the court assumes that

plaintiff can establish her dismissal from Florida A&M is sufficient to satisfy the "plus" in

the stigma-plus analysis,[4] plaintiff cannot establish that her right to continued enrollment was

clearly established at the time she was forced to withdraw from Florida A&M.  Therefore,

defendants are entitled to qualified immunity.

---

[3]The Akins court held:

> The question of whether a student at a state-supported university has a
> substantive due process right to continued enrollment in the program has been
> presented to the Supreme Court twice in recent times.  *Regents of the Univ. of
> Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Board of Curators, Univ. of Mo. v.
> Horowitz*, 435 U.S. 78, 91 (1978). On both occasions, the Court has declined
> specifically to decide the matter; in both cases, the Court assumed, for the sake
> of argument, that such a right existed and decided the case on another ground.
> No case from this court establishes such a right.  . . .  We believe that a
> university administrator, surveying these cases at the time the alleged activity
> described in the complaint took place, would have concluded that a substantive
> due process-based right to continued enrollment in a state-sponsored academic
> program was not clearly established.  Therefore, the defendants in this case are
> protected from an action for damages by the doctrine of qualified immunity.

*Akins*, 840 F.2d at 1376-77 (internal citations and footnote omitted).

[4]The court doubts that, even if her continued enrollment at Florida A&M constitutes
a protected property interest, she could establish it was a "right vouchsafed to [her] by the
State and thereby protected under the Fourteenth Amendment."  *Paul*, 424 U.S. at 712.  The
defendants, Alabama state actors, do not afford plaintiff the right to continued enrollment in
Florida.  *See id.* at 711 (the alteration of a right sufficient to invoke the Due Process Claim
is the "official[ ] remov[al]" of an interest recognized and protected by the State)

19

Based on the foregoing, the court finds that plaintiff's claim of a stigma-plus violation of her due process rights is due to be dismissed because plaintiff has not alleged and cannot prove that her right to continued enrollment at Florida A&M was clearly established at the time she withdrew.  Thus, defendants are entitled to qualified immunity.

Defendants' Motion to Dismiss is due to be granted as to plaintiff's stigma-plus due process claim, and such claim is due to be dismissed.

### d.  Claim Four:  Deprivation of Property Without Due Process of Law

Plaintiff alleges that "defendants violated Gray's right to due process of law under the Fifth Amendment to the Constitution."  (Doc. 1 ¶ 48.)    As set forth above, the Fifth Amendment due process clause is limited to claims against the United States and its agents. *See Dusenbery*, 534 U.S. at 167.  Because plaintiff does not allege any deprivation caused by the United States or its agent, her Fifth Amendment procedural due process claim  is due to be dismissed.

### e.  Claim Five:  Fifth Amendment Deprivation of Property Without Just Compensation

Plaintiff alleges, "Defendants' conduct toward Gray . . . interfered with and violated Gray's constitutional right to be free from deprived property without just compensation." (Doc. 1 ¶ 52.)  "The Takings Clause in the Fifth Amendment, which was made applicable to the States through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation.  *Givens v. Alabama Dept of Corrections*, 381 F.3d 1064, 1066 (11th Cir. 2004)(citing *Phillips v. Washington Legal Found.*, 524 U.S.

156, 163-64(1998)(quoting U.S. CONST. amend. V)). "The Takings Clause protects private property; it does not create it." *Id.* Therefore, plaintiff must allege and prove a protected property interest was taken by the defendants in order to state a claim under the Taking Clause of the Fifth Amendment. For the reasons set forth above, the court finds that plaintiff's Complaint fails to allege such a protected property interest.[5]

Therefore, plaintiff's claim that defendants deprived her of her property in violation of the Takings Clause of the Fifth Amendment is due to be dismissed.

### f. Claim Six:  Fourteenth Amendment Deprivation of Property Without Due Process of Law

Plaintiff alleges, "Defendants' arbitrary conduct toward Gray . . . interfered with and violated Gray's constitutional right to not be deprived of property with[out] due process of law . . . ." As set forth above, plaintiff has not alleged a protected property interest. Therefore, Claim Six of plaintiff's Complaint is due to be dismissed.

### g.  Claim Seven:  Fourteenth Amendment Equal Protection Violation

Plaintiff Complaint states:

---

[5]The court notes that plaintiff's Complaint does not allege that whatever property defendants took from her was taken for "public use." There cannot be a Fifth Amendment taking if there is no showing of a taking for "public use." *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 583 n.7 (11th Cir. 2001)(citing *San Diego Gas & Elec. v. City of San Diego*, 450 U.S. 621, 656 n.23 (1981)(Brennan, J., dissenting). A government taking for some purpose other than public use may be actionable under the due process clause of the Fourteenth Amendment. *Id*.

56.  This is a claim under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States to redress [deprivation] in that Gray was treated differently than similarly situated individuals.

60.  The arbitrary conduct of the defendants violated Gray['s] right to equal protection of the law, namely her right to be afforded equal protection of the laws.

(Doc. 1 ¶¶ 59-60.)  Plaintiff's "bare assertion" that she was treated differently than others is not sufficient to state a claim based on a violation of the Equal Protection Clause.  "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint *must* attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff."  *GJR Investments*, 132 F.3d at 1367-68 (emphasis added).  Neither plaintiff's Complaint nor her Response to Defendant's Motion to Dismiss attempts to show any other person was similarly situated to plaintiff.  Therefore, Claim Seven of plaintiff's Complaint, alleging defendants violated plaintiff's rights under the Equal Protection Clause, is due to be dismissed.

### h.  Claim Eight:  Violation of First Amendment Freedom of Association

Plaintiff's Complaint alleges that defendants' conduct "interfered with and violated Gray's constitutional right to freedom of association guaranteed her by the First Amendment to the Constitution of the United States of America."  (Doc. 1 ¶ 64.)   Plaintiff does not define the "association" she alleges has been infringed by defendant's conduct in this count of her Complaint; however, in another count and in her Response to Defendants' Motion to

Dismiss or in the Alternative Motion to Transfer Venue, plaintiff alleges defendants interfered with her association with her father.

The court notes that familial association is protected from government interference by the Fourteenth Amendment, not the First Amendment.

> The Supreme Court has explained that the Constitution protects two distinct forms of free association.  The first, freedom of *expressive association*, arises from the *First Amendment* and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment.  The second, freedom of *intimate association*, protects the right "to enter into and maintain certain intimate human relationships."  The freedom of intimate association "receives protection as a fundamental element of personal liberty," and as such is protected by the *due process clauses*.

*Montgomery v. Stefaniak*,  410 F.3d 933, 937 (7th Cir. 2005)(citing and quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18(1984); other citations omitted)(emphasis added); *see also Robertson v. Hecksel*, 420 F.3d 1254, 1256-58 (11th Cir. 2005)(analyzing case involving claim of interference with "alleged parental liberty interests" under the Due Process Clause).  Therefore, the court will analyze plaintiff's claim of interference with her relationship with her father under the Due Process Clause.

The court's first task is to determine 'whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'"  *Robertson*, 420 F.3d at 1256.  The Eleventh Circuit has held that "a parent does not have a constitutional right of companionship with an adult child," and "a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests."  *Id*. at 1259, 1262.  Therefore, the court finds that plaintiff does not have a constitutional right to associate with her father.

23

Plaintiff's Complaint fails to allege a violation of clearly established right to associate with her father.   Therefore, Claim Eight of plaintiff's Complaint is due to be dismissed.

### i.  Claim Nine:  Violation of First and Fourteenth Amendment Unlawful Retaliation

Plaintiff alleges, "Defendants have retaliated against Gray with regard to the terms and conditions of her contract with Alabama A&M which conferred a degree upon her and defendants have breached said contract due in part to her association with her father." (Doc. 1 ¶ 68.)   She alleges that this claim is brought pursuant to the First and Fourteenth Amendments and 42 U.S.C. § 1983 and 42 U.S.C. § 1981.

• **First and Fourteenth Amendment**

As set forth above, plaintiff does not have a constitutional right to association with her father.   Therefore, plaintiff's retaliation claim based on such association is due to be dismissed.

• **Section 1981**

In order to support a claim for retaliation in violation of § 1981, plaintiff must prove that she complained about race discrimination.  *See Webster v. Fulton County, Ga.*, 283 F.3d 1254, 1257 (11th Cir. 2002)("Section 1981's protection extends to prohibiting retaliation against a party who has filed a formal complaint charging racial discrimination"); *Little v. United Technologies*, 103 F.3d 956, 961 (11th Cir. 1997)(to establish a § 1981 retaliation, plaintiff must allege the "retaliation allegedly leveled against him was due to his race")

24

Plaintiff's Complaint makes no reference to race discrimination or to any complaints about race discrimination.  Therefore, plaintiff's claim of retaliation in violation of § 1981 will be dismissed.

## B.  STATE CLAIMS

Having determined that plaintiff's federal claims are due to be dismissed, the court declines to exercise jurisdiction over plaintiff's remaining state-law claims pursuant to 28 U.S.C. § 1367(c).  *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)(The Eleventh Circuit "has noted that 'if the federal claims are dismissed prior to trial, [the Supreme Court] strongly encourages or even requires dismissal of state claims.'")(quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984)(citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)("Resolution of Plaintiffs' state law claims depends on determinations of state law.  State courts, not federal courts, should be the final arbiters of state law.  When coupled with the Court's discretion to exercise supplemental jurisdiction under § 1367(c), this Court finds that the state law claims remaining in this action are best resolved by the [state] courts.  This is especially true here where the Court is dismissing Plaintiffs' federal law claim prior to trial.")(citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.")).

Therefore, plaintiff's state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that defendants' Motion to Dismiss is due to be granted and plaintiff's claims dismissed without prejudice.  An Order granting defendants' Motion to Dismiss will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 9th day of February, 2006.


SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE